IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARIO KEOLA,

       Petitioner,              No. CIV S-04-1935 FCD GGH P

    vs.

M. KNOWLES, et al.,

       Respondent.       FINDINGS AND RECOMMENDATIONS

_____/

        Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2000 conviction for murder (Cal. Penal Code § 187; count one), vehicular manslaughter with gross negligence while intoxicated (Cal. Penal Code § 191.5(a); count two), driving while under the influence causing injury (Cal. Veh. Code § 23153(a); count three), evading a peace officer causing death (Cal. Veh. Code § 2800.3; count four), evading a peace officer while driving with willful and wanton disregard (Cal. Veh. Code § 2800.2(a); count five), vehicle theft (Cal. Veh. Code § 10851(a); count six), and receiving stolen property (Cal. Penal Code § 496(a); count seven).  On counts three and five, the jury found that petitioner inflicted great bodily injury on four victims.  (Cal. Penal Code § 12022.7(a)).  Petitioner admitted having suffered three prior auto theft convictions (Cal. Penal Code § 666.5; Cal. Veh. Code § 10851(e)), and having served five prior prison terms (Cal. Penal

1

1 Code § 667.5(b)).  Petitioner is serving a determinate term of 18 years, which includes a one-year

2 consecutive term for count six auto theft, plus a consecutive indeterminate term of 15 years to

3 life.

4        Petitioner challenges his conviction on the following grounds.  First, he alleges

5 that the consecutive term for auto theft violated <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 120 S.

6 Ct. 2348 (2000) as well as state law.  Second, he alleges that he is entitled to additional days of

7 presentence credit.

8        After carefully reviewing the record, the court recommends that the petition be

9 denied.

10 II.  <u>Anti-Terrorism and Effective Death Penalty Act (AEDPA)</u>

11       The AEDPA applies to this petition for habeas corpus which was filed after the

12 AEDPA became effective.  <u>Neelley v. Nagle,</u> 138 F.3d 917 (11th Cir.), citing <u>Lindh v. Murphy</u>,

13 117 S. Ct. 2059 (1997).   The AEDPA "worked substantial changes to the law of habeas corpus,"

14 establishing more deferential standards of review to be used by a federal habeas court in

15 assessing a state court's adjudication of a criminal defendant's claims of constitutional error.

16 <u>Moore v. Calderon</u>, 108 F.3d 261, 263 (9th Cir. 1997).

17       In <u>Williams (Terry) v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme

18 Court defined the operative review standard set forth in § 2254(d).  Justice O'Connor's opinion

19 for Section II of the opinion constitutes the majority opinion of the court.  There is a dichotomy

20 between "contrary to" clearly established law as enunciated by the Supreme Court, and an

21 "unreasonable application of" that law.  <u>Id</u>. at 1519.  "Contrary to" clearly established law applies

22 to two situations:  (1) where the state court legal conclusion is opposite that of the Supreme

23 Court on a point of law, or (2) if the state court case is materially indistinguishable from a

24 Supreme Court case, i.e., on point factually, yet the legal result is opposite.

25       "Unreasonable application" of established law, on the other hand, applies to

26 mixed questions of law and fact, that is, the application of law to fact where there are no factually

2

1   on point Supreme Court cases which mandate the result for the precise factual scenario at issue.

2   Williams (Terry), 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000).  It is this prong of the

3   AEDPA standard of review which directs deference to be paid to state court decisions.  While the

4   deference is not blindly automatic, "the most important point is that an *unreasonable* application

5   of federal law is different from an incorrect application of law....[A] federal habeas court may not

6   issue the writ simply because that court concludes in its independent judgment that the relevant

7   state-court decision applied clearly established federal law erroneously or incorrectly.  Rather,

8   that application must also be unreasonable."  Williams (Terry), 529 U.S. at 410-11, 120 S. Ct. at

9   1522 (emphasis in original).  The habeas corpus petitioner bears the burden of demonstrating the

10  objectively unreasonable nature of the state court decision in light of controlling Supreme Court

11  authority.  Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

12          The state courts need not have cited to federal authority, or even have indicated

13  awareness of federal authority in arriving at their decision.  Early v. Packer, 537 U.S. 3, 123 S.

14  Ct. 362 (2002).  Nevertheless, the state decision cannot be rejected unless the decision itself is

15  contrary to, or an unreasonable application of, established Supreme Court authority.  Id.  An

16  unreasonable error is one in excess of even a reviewing court's perception that "clear error" has

17  occurred.  Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003).  Moreover, the

18  established Supreme Court authority reviewed must be a pronouncement on constitutional

19  principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules

20  binding only on federal courts.  Early v. Packer, 123 S. Ct. at 366.

21          However, where the state courts have not addressed the constitutional issue in

22  dispute in any reasoned opinion, the federal court will independently review the record in

23  adjudication of that issue.  "Independent review of the record is not de novo review of the

24  constitutional issue, but rather, the only method by which we can determine whether a silent state

25  court decision is objectively unreasonable."  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir.

26  2003).

III.  Factual Background

A factual summary is contained in the opinion of the California Court of Appeal. After independently reviewing the record, the court finds this summary to be accurate and adopts it below.

> Shortly after noon on September 25, 1998, a California Highway Patrol officer responded to a dispatch call related to a possible drunk driver on westbound Interstate 80 in the Truckee area.  The officer attempted to stop the car, driven by defendant, but it sped away.  Shortly thereafter, the officer located the car traveling north on State Route 89 and saw it pass the two cars over double solid lines.  Defendant's car almost struck a logging truck head on. Defendant then passed another car in a no-pass zone, causing two other cars to pull to the side of the road.
>
> Defendant continued driving recklessly down the middle of the road and passed more vehicles in an unsafe manner.  The officer estimated that defendant was traveling 90 miles per hour.  After evading the officer for nearly 12.2 miles, defendant's car struck a blue Pontiac that had slowed and pulled over to avoid being struck by him.
>
> Janice Fulton, a passenger in the Pontiac, died on October 5, 1998, as a result of massive internal injuries suffered in the collision. The driver and two other passengers suffered broken bones and lacerations both externally and internally. The car defendant was driving had been stolen from a parking lot in Reno.  Its owner had last seen it four days previously.

See Exhibits to Petition, Opinion of Court of Appeal, pp. 2-3.

IV.  Discussion

A.  Procedural Default

Respondent argues that petitioner's claims are procedurally defaulted.  Based on concerns of comity and federalism, federal courts will not review a habeas petitioner's claims if the state court decision denying relief rests on a state law ground that is independent of federal law and adequate to support the judgment.  Coleman v. Thompson, 501 U.S. 722, 111 S. Ct. 2546, 2554 (1991); Harris v. Reed, 489 U.S. 255, 260-62, 109 S. Ct. 1038 (1989).  Generally, the only state law grounds meeting these requirements are state procedural rules.  However, the procedural basis of the ruling must be clear.  Ambiguous reference to procedural rules is

1  insufficient for invocation of procedural bar.  <u>Calderon v. United States District Court (Bean)</u>, 96

2  F.3d 1126, 1131 (9th Cir. 1996).  Similarly, where the procedural and merits analysis are

3  intermixed, it cannot be said that the procedural bar is independent of federal law, i.e., there is no

4  plain statement of reliance on procedural bar.  <u>Harris v. Reed</u>, <u>supra</u>.

5       If there is an independent and adequate state ground for the decision, the federal

6  court may still consider the claim if the petitioner demonstrates:  (1) cause for the default and

7  actual prejudice resulting from the alleged violation of federal law, or (2) a fundamental

8  miscarriage of justice.  <u>Harris</u>, 489 U.S. at 262, 109 S. Ct. at 1043.  The existence of cause for a

9  procedural default must ordinarily turn on whether the prisoner can show that some objective

10 factor external to the defense impeded counsel's efforts to comply with the State's procedural

11 rule.  <u>McCleskey v. Zant</u>, 499 U.S. 467, 493-94, 111 S. Ct. 1454, 1476 (1991).  Examples of

12 cause include showings "that the factual or legal basis for a claim was not reasonably available to

13 counsel," "that some interference by officials made compliance impracticable," or "of ineffective

14 assistance of counsel."  <u>Murray</u>, 477 U.S. at 488, 106 S. Ct. at 2645.  Prejudice is difficult to

15 demonstrate:

16       The showing of prejudice required under <u>Wainwright v. Sykes</u> is
         significantly greater than that necessary under "the more vague
17       inquiry suggested by the words 'plain error.'"  <u>Engle</u>, 456 U.S., at
         135, 102 S.Ct., at 1575; <u>Frady</u>, <u>supra</u>, 456 U.S., at 166, 102 S.Ct.,
18       at 1593.  See also <u>Henderson v. Kibbe</u>, 431 U.S. 145, 154, 97 S.Ct.
         1730, 1736, 52 L.Ed.2d 203 (1977).  The habeas petitioner must
19       show "not merely that the errors at ... trial created a possibility of
         prejudice, but that they worked to his actual and substantial
20       disadvantage, infecting his entire trial with error of constitutional
         dimensions."  <u>Frady</u>, <u>supra</u>, at 170, 102 S.Ct., at 1596.

21

22 <u>Murray v Carrier</u>, 477 U.S. at 493-494, 106 S. Ct. at 2648 (1986).

23 Although different phraseology is used in the default context from that used in the ineffective

24 assistance of counsel prejudice inquiry, as stated above, the ultimate application of the two

25 prejudice inquiries is essentially similar—that is, whether the prejudice is sufficient to have

26 undermined the reviewer's confidence in the result of the trial.

1          Petitioner raised the claims brought in the instant petition in his direct appeal filed

2  in the California Court of Appeal.  On January 22, 2002, the California Court of Appeal denied

3  petitioner's appeal.  See Respondent's January 28, 2005, lodged documents, doc. 5.  Petitioner

4  did not file a petition for review in the California Supreme Court.  On February 6, 2003,

5  petitioner filed a habeas corpus petition in the California Supreme Court.  Id., doc. 6.  On

6  September 17, 2003, the California Supreme Court denied the petition citing In re Waltreus, 62

7  Cal.2d 218 (1965).

8          In Ylst v. Nunnemaker, 501 U.S. 797, 805, 111 S. Ct. 2590, 2595 (1991), the

9  Supreme Court concluded that a Waltreus citation is neither a ruling on the merits nor a denial on

10  procedural grounds.  It held that since petitioners in California are not required to go to state

11  habeas for exhaustion purposes, a Waltreus denial on state habeas has no bearing on their ability

12  to raise a claim in federal court.  501 U.S. at 805, 111 S. Ct. at 2595.  Thus, federal courts "look

13  through" a denial based on Waltreus to previous state court decisions.  Id. at 805-806, 111 S. Ct.

14  at 2595-96.

15          In Forrest v. Vasquez, 75 F.3d 562 (9th Cir. 1996) the Ninth Circuit found that,

16  under the circumstances of that case, the citation to Waltreus showed that the basis of the

17  decision by the California Supreme Court was procedural default.  In Forrest, the petitioner

18  appealed his conviction to the California Court of Appeal arguing, in part, that he had been

19  denied access to the law library.  75 F.3d at 563.  The California Court of Appeal affirmed his

20  conviction.  Id.  Under Rule 28(b) of the California Rules of Court, a petition for review to the

21  California Supreme Court must be filed within ten days after the Court of Appeal decision

22  becomes final.  Id.  The Forrest petitioner failed to file a timely petition for review, and the

23  California Supreme Court denied his application for relief from default.  Id.  The Forrest

24  petitioner later filed a petition for habeas corpus in the California Supreme Court, again alleging

25  that his rights had been violated by denial of law library access.  Id.  The California Supreme

26  Court denied the petition citing Waltreus.  Id.

1    The Ninth Circuit found that the petitioner's failure to raise his claim in a petition
2    for review cost him his only chance to present properly his claim to the California Supreme Court
3    because <u>Waltreus</u> prohibits that court from reviewing on habeas any claim raised during the
4    direct appeal process.  <u>Id.</u> at 564.  "The effect of the <u>Waltreus</u> rule is that a California prisoner
5    wishing to exhaust remedies in state court should generally present his claim to the California
6    Supreme Court in a petition for direct review, rather than a habeas petition."  <u>Id.</u>  The failure of
7    the <u>Forrest</u> petitioner to file a timely petition for review deprived the California Supreme Court
8    of an opportunity to address his claim in the first instance, and resulted in the procedural default
9    of this claim.  <u>Id.</u>

10    The Ninth Circuit distinguished <u>Forrest</u> from <u>Ylst</u> in that in <u>Ylst</u>, the Supreme
11    Court looked through a <u>Waltreus</u> citation, and then various unexplained orders, to the last
12    *explained* state judgment.  In <u>Forrest</u>, the Ninth Circuit stated that it would not look past the
13    California Supreme Court's *unexplained* order denying his application for relief from default.  <u>Id.</u>
14    "The 'nature' and 'surrounding circumstances' of the unexplained order clearly show that the
15    basis of the decision was procedural default."  <u>Id.</u>

16    The instant case is distinguishable from <u>Forrest</u> in that here, there is no order
17    finding these claims defaulted on direct appeal.  This court is able to look through the order by
18    the California Supreme Court denying petitioner's habeas petition to the reasoned opinion of the
19    California Court of Appeal denying these claims on the merits.  Accordingly, <u>Waltreus</u> does not
20    bar these claims.

21    B.  <u>Sentence for Auto Theft</u>

22    Petitioner first argues that his sentence for count six, auto theft, violates <u>Apprendi</u>,
23    <u>supra</u>.  The California Court of Appeal rejected this claim for the following reasons:

24        Defendant contends his count six auto theft sentence cannot stand
           because the United States Supreme Court has held in <u>Apprendi v.</u>
25         <u>New Jersey</u> (2000) 530 U.S. 466 that, "Other than the fact of a
           prior conviction, any fact that increases the penalty for a crime
26         beyond the prescribed statutory maximum must be submitted to a

7

1      jury, and proved beyond a reasonable doubt." (Id. at p. 490).  We
       disagree.
2
       Apprendi is not on point because the disputed fact, that the auto
3      theft and subsequent driving were separate, does not increase
       defendant's punishment beyond the statutory maximum but merely
4      bars a reduction in punishment pursuant to section 654.  (People v.
       Cleveland (2001) 87 Cal.App.4th 263, 270; followed in People v.
5      Solis (2001) 90 Cal.App.4th 1002, 1022).

6  Exhibits to Petition, Opinion of Court of Appeal, pp. 3-4.

7              For the reasons stated by the state appellate court, this court finds that Apprendi is

8  not on point to petitioner's claim.  Apprendi does not go so far as to hold that where mitigation is

9  possible by application of a procedural sentencing statute, all facts related to that possible

10 mitigation must be tried to a jury.  Because the denial of this claim by the California Court of

11 Appeal was not an unreasonable application of clearly established Supreme Court authority, this

12 claim should be denied.

13             Petitioner next argues that his sentence for count six, auto theft, violated Cal.

14 Penal Code § 654(a).  Petitioner is claiming a violation of state sentencing law.  "Absent a

15 showing of fundamental unfairness, a state court's misapplication of its own sentencing laws

16 does not justify federal habeas relief.'"  Christian v. Rhode, 41 F.3d 461, 469 (9th Cir. 1994).

17 Accordingly, the court must determine whether petitioner's sentence violated fundamental

18 fairness.

19             The California Court of Appeal denied this claim on the following grounds:

20             Defendant contends section 654 requires that his sentence for auto
               theft be stayed.  He claims his auto theft activity in count six was
21             merely incidental to the reckless driving activity that led to his
               convictions on counts one through five.  We do not agree.
22
               'The proscription against double punishment in section 654 is
23             applicable where there is a course of conduct which...comprises an
               indivisible transaction punishable under more than one
24             statute...The divisibility of a course of conduct depends upon the
               intent and objective of the actor, and if all the offenses are incident
25             to one objective, the defendant may be punished for any one of
               them but not for more than one.' [Citation.]  'The defendant's
26             intent and objective are factual questions for the trial court; [to

                                        8

permit multiple punishments,] there must be evidence to support a finding the defendant formed a separate intent and objective for each offense for which he was sentenced.' [Citation.]" (<u>People v. Coleman</u> (1989) 48 Cal.3d 112, 162; <u>see</u> <u>People v. Latimer</u> (1999) 5 Cal.4th 1203, 1208; <u>People v. Cleveland</u>, <u>supra</u>, 87 Cal.App.4th at p. 268.)

In imposing a consecutive term on count six, the trial court stated that the "crimes were committed at different times and at different places. That is the auto theft took place in Reno, the crash and subsequent death took place in Sierra County. Remote in time and place. [¶].. [] We have a vehicle theft. The question is, is that the same activity as the reckless driving under the influence causing death and/or the death itself. And it is the Court's finding that there is a discontinuity of the two. He could very well have stolen the vehicle and stayed in Reno. He chose to steal a vehicle, then he proceeded on a drive which ultimately ended up with attempting to evade the Highway Patrol and crash in Sierra County. I find those are two separate events, and therefore it is appropriate that the sentence run consecutively rather than concurrently."

The trial court's express finding of "separate events," and its implied finding of separate intents and objectives, are supported by substantial evidence.

The evidence showed that the stolen car was last seen by its owner on September 21, 1998, and was involved in the high speed pursuit and crash four days later on September 25, 1998. The steering column near the ignition switch was broken away and parts of the ignition switch were exposed. There were no keys in the ignition or anywhere else in the car. The trial court could deduce that defendant's erratic, reckless driving while intoxicated was inconsistent with the knowledge and skill required to pierce the steering column, disable the wheel lock and start the engine. Thus, the court could conclude that defendant stole the car a significant period of time before he became intoxicated and drove under the influence. (<u>People v. Coleman</u>, <u>supra</u>, 48 Cal.3d at p. 162.)

This case is unlike <u>In re Asean D.</u> (1993) 14 Cal.App.4th 467, on which defendant relies. In <u>In re Asean D.</u>, the minor robbed two occupants of a van "for the purpose of taking the vehicle [in] a single transaction." Section 654 prohibited separate sentences for robbery and vehicle theft because "there was no separate criminal objective in the brutalizing of the victims beyond compelling them to give up their [van]." (<u>Id.</u> at p. 475.) Here, in contrast, the trial court could find that defendant had the separate objective of leaving Reno long before he found reason to take flight from California law enforcement.

Exhibits to Petition, Opinion of Court of Appeal, pp. 4-6.

1    For the reasons stated by the California Court of Appeal, this court finds no
2  misapplication of state sentencing laws.  More importantly, the court can find no violation of
3  fundamental fairness by correct application of state law.  Because the denial of this claim the
4  California Court of Appeal was not an unreasonable application of clearly established Supreme
5  Court authority, this claim should be denied.

6    C.  <u>Presentence Credit</u>

7    Petitioner argues that he is entitled to additional days of presentence credit.  The
8  California Court of Appeal granted petitioner relief as to this claim and awarded him the
9  presentence credit requested.  Exhibits to Petition, Opinion of Court of Appeal, pp. 6-7.
10  Accordingly, this claim should be denied as moot.

11    Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for
12  a writ of habeas corpus be denied.

13    These findings and recommendations are submitted to the United States District
14  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty
15  days after being served with these findings and recommendations, any party may file written
16  objections with the court and serve a copy on all parties.  Such a document should be captioned
17  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
18  shall be served and filed within ten days after service of the objections.  The parties are advised
19  that failure to file objections within the specified time may waive the right to appeal the District
20  Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

21  DATED:  6/20/05

22    /s/ Gregory G. Hollows

23    _____
     GREGORY G. HOLLOWS
     UNITED STATES MAGISTRATE JUDGE
24  ggh:kj
    keola.157
25

26

                                      10